COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judges Baker, Barrow,* Benton,
     Coleman, Koontz,** Willis, Elder and Fitzpatrick
Argued at Richmond, Virginia


LAWRENCE WRIGHT
                                        OPINION BY
v.      Record No. 1509-92-1     JUDGE JOSEPH E. BAKER
                                     AUGUST 6, 1996
COMMONWEALTH OF VIRGINIA


                   UPON A REHEARING EN BANC

        FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                 John E. Clarkson, Judge

        B. Thomas Reed for appellant.

        G. Russell Stone, Jr., Assistant Attorney
        General (James S. Gilmore, III, Attorney
        General, on brief), for appellee.



     Lawrence Wright (appellant) appeals from his conviction for

possession of cocaine with intent to distribute in violation of

Code § 18.2-248.  Appellant contends that the trial court erred

when it refused to permit him to introduce hearsay evidence after

a Commonwealth's witness "opened the door" by making reference to

other inadmissible hearsay evidence.  A majority of a panel of

this Court, in an unpublished opinion, held that the trial court

did not err when it refused to let appellant introduce the

hearsay in response to the Commonwealth's evidence.  Wright v.

---

* Judge Barrow participated in the hearing and decision of
this case prior to his death on March 28, 1995.

** Justice Koontz participated in the hearing and decision of
this case prior to his investiture as a Justice of the Supreme
Court of Virginia.

Commonwealth, No. 1509-92-1 (Va. Ct. App. August 30, 1994). The Court granted appellant's petition for rehearing en banc. Upon rehearing, we affirm the judgment of the trial court.

I.

On October 29 and 30, 1991, using an informant, Norfolk City Police Officer James N. Stevens (Stevens) directed controlled purchases of cocaine at 2405 Jamaica Avenue in that city.[1] Stevens recorded the serial numbers and gave the informant four ten-dollar bills to make the purchases. To support the issuance of a warrant to search 2405 Jamaica Avenue for narcotics and related property and persons, Stevens executed an affidavit based, in part, on his role in the controlled purchases and, in part, on information given to him by the informant. The sole issue before us arises from the trial court's refusal to permit appellant to introduce, through cross-examination of Stevens, information contained in the affidavit and given to Stevens by the informant after the controlled purchases were made.

For an understanding of the trial court's ruling, it is necessary to review the relevant parts of Stevens' affidavit,[2] which are as follows:

> For the last week I have been receiving

---

[1] Those purchases are not at issue here. The conviction from which this appeal emanates is from the cocaine and related items found when the Jamaica Avenue residence was searched. Appellant does not contest the sufficiency of the evidence to support the conviction.

[2] The affidavit is contained in the trial court's record, but it was not entered as an exhibit.

information from a confidential informant [CI] that a subject known to the CI as Lawrence Wright is selling cocaine from 2405 Jamaica Avenue Norfolk, Virginia. The CI has described Lawrence Wright to me as a balck [sic] male, about five feet eight inches tall to five feet nine inches tall, weighing about one hundred and seventy five pounds, short hair, clean shaven, light brown skin and in his late thirties to early forties. I have checked Norfolk Police Department records and found that Lawrence Wright is five feet eight inches tall and weighs one hundred and sixty seven pounds. I have shown a photograph of Lawrence Wright to the CI, who identified the photograph of Lawrence Wright as the person selling cocaine from 2405 Jamaica Avenue Norfolk, Virginina [sic].

Within the last seventy-two (72) hours I have met with the CI for the purpose of making a controlled purchase of cocaine from Lawrence Wright at 2405 Jamaica Avenue Norfolk, Virginia. The CI was thoroughly searched for contraband with negative results. I then provided the CI with United States Currency with prerecorded serial numbers. The CI was then instructed to go to 2405 Jamaica Avenue and to buy a quantity of cocaine from Lawrence Wright. The CI then left me and went directly to 2405 Jamaica Ave and entered the residence. A short time later the CI left the residence and returned directly to me. Upon returning to me the CI turned over a quantity of suspected cocaine to me. I feild [sic] tested the suspected cocaine with positive results.

Pursuant to the affidavit, a search warrant was issued on October 31, 1991, and, upon execution of the warrant, contraband was found.[3] In addition, $608 in paper money was found on

---

[3] Discovered in appellant's presence or in the house were five small bags of cocaine, eleven other bags containing cocaine residue, a gun, ammunition, scales, a test tube, and 515 small plastic bags.

appellant's person, including the four ten-dollar bills Stevens had given the informant to buy the cocaine. Appellant was indicted for possession of cocaine with intent to distribute in violation of Code § 18.2-248.

Appellant was tried on that charge prior to the trial from which this appeal emanates but a mistrial was declared because the jury could not reach a unanimous verdict. At that first trial, the court permitted the jury to hear hearsay evidence contained in the affidavit.

Prior to appellant's second trial, the Commonwealth filed a motion in limine requesting the trial court to prevent appellant from

> 1. presenting evidence regarding the identity of the person from whom the confidential informant purchased cocaine during the 72 hours preceding execution of the search warrant; and
>
> 2. presenting evidence regarding the description of the above-described person provided by the confidential informant as recited by Inv. J. N. Stevens in his affidavit for search warrant;

The trial court granted the Commonwealth's motion, stating that

> I think that it is best in every trial to keep any hearsay out. I think that anything a confidential informant would have said to a police officer is certainly hearsay as part of the law. I think we would run the risk if I let that in. I would also have to let in a confidential informant's saying, "I'm going to buy drugs from Mr. X, and he is--"
> I don't think it would be fair to let the jury get the information they were going to buy drugs from there, and I think the clean-shaven--I think it's just best to keep

- 4 -

the whole affidavit out.  You can
cross-examine officers as to what they did in
the case.

During the second trial, Stevens testified as to how a controlled buy of narcotics is set up and conducted and added that the same procedure was used in this case on October 29, 1991 and October 30, 1991.  He testified that after the controlled buys, he obtained a search warrant for the residence and executed the warrant on October 31, 1991.

Stevens testified that during the search he had a conversation with appellant.  In response to the Commonwealth Attorney's question regarding the nature of his conversation with appellant, Stevens stated that he told appellant that the police were going to make a thorough search of the residence and that it would save a great deal of time if appellant would tell them where any drugs, packaging material, scales, and the like were located.  Stevens continued, stating:

I also pointed out that [appellant] was named
in the affidavit for the search warrant as
the person who was selling drugs and that the
only other person named in the warrant was
his Aunt Thelma and that she was mentioned
only because she lived there or was listed as
living there.

Appellant did not object to Stevens' testimony, nor did he move for a mistrial or request any other remedy.  At oral argument, counsel for appellant frankly stated that he deliberately withheld any objection or motion because he wanted to introduce the hearsay evidence the trial court earlier had refused to

allow.

After the Commonwealth concluded its examination of Stevens, but prior to appellant's cross-examination, appellant argued that Stevens' testimony concerned things about which Stevens had no personal knowledge and was "objectionable" hearsay. The trial court asked, "[W]hy wasn't there an objection right there?" Appellant's counsel responded that a contemporaneous objection would have emphasized the objectional evidence to the jury. The trial court responded, "[I] was waiting for an objection." Appellant's counsel then stated, "[I] don't want a mistrial in this case," only the right "to show that the confidential informant described [the] person . . . selling drugs as being clean-shaven." Appellant's counsel asserts that he wanted the informant's description entered because he then could show that appellant was not clean shaven on the day of his arrest.

## II.

Appellant argues that the Commonwealth "opened the door" to his proffered hearsay testimony by eliciting inadmissible hearsay testimony itself and that the trial court erred by refusing to allow him to counter that evidence. We hold that the trial court did not abuse its discretion by refusing to admit irrelevant hearsay under the theory that the Commonwealth had "opened the door" for such evidence.

"Opening the door" to the admission of evidence is a catchphrase often used to refer to the doctrine of "curative

admissibility."  Curative admissibility, in its broadest form, allows a party to introduce otherwise inadmissible evidence when necessary to counter the effect of improper evidence previously admitted by the other party without objection.  Clark v. State, 629 A.2d 1239, 1244-45 (Md. 1993); see also 1 John Henry Wigmore, Wigmore on Evidence, § 15 (Rev. ed. 1983).

In Graham v. Commonwealth, 127 Va. 808, 103 S.E. 565 (1920), Graham was charged with murder and defended on the ground of self-defense.  At trial, Graham introduced evidence that the deceased had used profanity shortly before his death.  Thereafter, to rebut Graham's evidence, the Commonwealth introduced evidence that the deceased was not in the habit of swearing.  On appeal, Graham argued that the Commonwealth's evidence was immaterial and that the trial court erred in admitting it.  In concluding that the trial court did not err, the Supreme Court held that, although Graham's evidence was irrelevant and would have been inadmissible if objected to by the Commonwealth, "it [did] not follow that such testimony . . . [could not] be rebutted later."  Id. at 824, 103 S.E. at 570.  The Court noted that its holding was an exception to the "rule that the time of the courts will not be allowed to be occupied in the trial of collateral issues by allowing the introduction of rebuttal testimony thereon."  Id. at 825, 103 S.E. at 570-71.  See also Roy v. Commonwealth, 191 Va. 722, 729, 62 S.E.2d 902, 905 (1951).

In <u>Graham</u> and <u>Roy</u>, the answering parties introduced evidence relevant to "curing" any harm resulting from previously admitted <u>irrelevant</u> evidence. No exception to the rules of evidence was made; the courts merely allowed a party to address what was, at one point in the trial, an extraneous matter. <u>Graham</u> and its progeny clearly provide, in limited instances, for the admission of evidence to counter previously admitted, unobjected to <u>irrelevant</u> evidence. We need not here decide whether a trial judge may, in his or her discretion, admit <u>hearsay</u> evidence to cure or correct impermissible prejudice caused by the introduction of inadmissible evidence.

The case before us is not controlled by <u>Graham</u>. The two cases are clearly factually and legally distinguishable. Here, the affidavit and search warrant issued pursuant thereto dealt with an informant's purchases made from a person in the Jamaica Avenue house on October 29 and October 30, 1991, respectively. The charge for which appellant was convicted, and from which this appeal emanates, arose from contraband found in appellant's possession in that house on October 31, 1991. Appellant does not here claim that the evidence is insufficient to show that on October 31, 1991, at the Jamaica Avenue address, he was found in possession of contraband and paraphernalia associated with unlawful distribution of cocaine. The refused evidence proffered by appellant would only have compounded any disregard of the trial court's <u>in</u> <u>limine</u> order because it would have suggested to

- 8 -

the jury that whether appellant was named in the search warrant or was the person described in the affidavit was somehow relevant and material to the charge that he possessed the drugs at the time and place the search warrant was executed.

Additionally, while a trial court generally has discretion in ruling on the admissibility of evidence, e.g., Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988), a trial court has no discretion to apply the doctrine of curative admissibility if the party seeking to invoke it intentionally failed to object to the inadmissible evidence in order to gain admission of otherwise inadmissible evidence. Clark v. State, 629 A.2d 1239, 1246 (Md. 1993). The record makes clear that this is what appellant's counsel attempted to do.[4] He intentionally failed to object to Stevens' testimony in order to attempt to gain admission of the description contained in the affidavit. Having done so, it was not error for the trial court to refuse to permit the proffered hearsay. If no limitations are placed on the doctrine of curative admissibility, the doctrine will

---

[4] Appellant's counsel acknowledged that he intentionally failed to object to Officer Stevens' testimony. His stated reason was that he did not want to call the statement to the attention of the jury. However, this explanation appears disingenuous because (1) he brought the same, allegedly prejudicial, statement which he, purportedly, did not want to call to the attention of the jury out on direct examination of his own client, and (2) he acknowledged to the court that he chose not to object to the introduction of the same evidence in the first trial because he "chose to take the good with the bad," thus revealing his intention to allow inadmissable evidence to be received without objection for the express purpose of gaining the admission of the description contained in the affidavit.

supersede the established rules of evidence and encourage counsel not to object to inadmissible evidence.

Our decision does not leave a party in appellant's situation without remedy. The proper method to preclude another party from entering inadmissible hearsay or any other form of inadmissible evidence is to make a contemporaneous objection.[5] To the extent that Stevens' testimony that appellant was named in the search warrant was received in violation of the in limine order, whether inadvertently or purposely, appellant was not relieved of the responsibility of objecting to that evidence. Moreover, his further remedy under those circumstances was to move the trial court to strike that evidence and instruct the jury to disregard it. Prejudice, if any, caused by the introduction of that irrelevant hearsay could thereby have been avoided or corrected.

For the reasons stated, we hold that the trial court did not abuse its discretion by refusing to admit irrelevant hearsay evidence proffered by appellant. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

---

[5] If trial tactic is the purpose for a party declining to timely object to inadmissible evidence, that party will not be heard to complain that he or she is unable to introduce other evidence of the same character. A breach of the rules of evidence by one party does not suspend those rules with respect to the other party. See United States v. Young, 470 U.S. 1 (1985).

Benton, J., with whom Elder, J., joins, dissenting.

On this appeal, Lawrence Wright contends that when the Commonwealth's attorney proved by a police officer's hearsay testimony that a search warrant affidavit contained an informant's allegation that Wright sold cocaine, the trial judge erred in refusing to allow Wright's counsel to cross-examine the officer to establish that the affidavit's description of the seller was inconsistent with Wright's physical appearance.  The majority opinion effectively rewards the Commonwealth's attorney for introducing evidence after she successfully requested the trial judge in limine to rule the evidence inadmissible.  Such a decision is unfair and fails to employ the doctrine of curative admissibility in the precise circumstance for which the doctrine was intended.  Therefore, I dissent and would reverse the conviction.

I.

The evidence proved that on October 29 and 30, 1991, Police Investigator James N. Stevens recorded the serial numbers of four ten-dollar bills and gave them to an informant to purchase narcotics.  The informant purchased cocaine at a residence on Jamaica Avenue in the City of Norfolk.  The informant described the man who sold cocaine as "clean shaven" with "light brown skin."

Based upon these purchases, Officer Stevens prepared an affidavit containing the informant's description of the seller

- 11 -

and obtained a warrant to search the Jamaica Avenue residence. On October 31, the day following the last sale, the police searched the residence and found drugs and contraband in several places at the residence. Wright and four other adults, including Wright's brother, were in the residence. The police arrested Wright and found the four marked bills and other money in Wright's possession. Wright was photographed on the day of his arrest, October 31; he was neither clean shaven nor light skinned.

Wright was tried for possession of cocaine with intent to distribute. He pleaded not guilty and denied selling cocaine. Wright's defense at the trial included the claim that the description of the person who possessed and sold cocaine was consistent with his brother's physical characteristics. In his defense, Wright also proved that he did not live at the residence but that his brother did. The jury that considered this evidence at the first trial did not agree upon a verdict. The trial judge declared a mistrial and ordered a second trial.

Prior to the retrial, the Commonwealth's attorney filed a written motion in limine requesting the trial judge to bar Wright from:

> (1) presenting evidence regarding the identity of the person from whom the confidential informant purchased cocaine during the 72 hours preceding execution of the search warrant; and
>
> (2) presenting evidence regarding the description . . . provided by the confidential informant [and] . . . recited by

Inv. J.N. Stevens in his affidavit for search warrant; . . . .

In its motion, the Commonwealth's attorney asserted the following:

1. the issue of the propriety of the search was resolved against [Wright] following a hearing on his Motion to Suppress on March 12, 1992;

2. the issues regarding identity are actually questions of law to be resolved by the judge rather than questions of fact to be resolved by the jury;

3. [Wright] is not charged with having made the sales in question; therefore, [Wright's] tactic requires the Commonwealth to prove uncharged misconduct. If the Commonwealth were to seek to prove uncharged misconduct, [Wright] would object. Fundamental fairness therefore requires that this motion be granted.

At the hearing on the motion, the Commonwealth's attorney sought to prohibit the defense from introducing any statements made by the informant or within the affidavit because the informant's physical description of the seller described the seller several days earlier and not at the time of Wright's arrest. The Commonwealth's attorney also argued that the description contained in the affidavit was hearsay. The trial judge granted the motion in limine and barred Wright from presenting evidence as to the affidavit's identification and description of the person who sold cocaine. On the morning of the trial, the trial judge entered a written order and stated that, "I think that it is best in every trial to keep any hearsay

- 13 -

out . . . [and] that anything a confidential informant would have said to a police officer is certainly hearsay as part of the law."

During the second trial, the Commonwealth's attorney proved through Officer Stevens' testimony that the police gave the informant money after recording the serial numbers. The police then directed the informant to enter the residence on Jamaica Avenue for the purpose of purchasing cocaine. Officer Stevens testified that following the "controlled buy," he executed an affidavit for a search warrant, went to the residence several hours later, and searched the residence for cocaine. Officer Stevens further testified that he questioned Wright during the search. In response to the Commonwealth's attorney's question, "What was the nature of your discussion in the bathroom?," Officer Stevens testified that he told Wright "that he was named in the affidavit for the search warrant as the person who was selling drugs and that the only other person named in the warrant was his Aunt Thelma and that she was mentioned only because she lived there or was listed as living there."

Before Wright's counsel began cross-examination of Officer Stevens, he again raised the issue of the limitation on cross-examination and argued that the Commonwealth attorney's questions on direct examination permitted him to question Officer Stevens concerning the affidavit's assertion that the seller was clean shaven and light skinned. In opposing the motion, the

Commonwealth's attorney did not assert that Officer Stevens' direct testimony was inadvertent but, instead, argued that Wright's counsel failed to object that Officer Stevens' testimony was hearsay and that the remedy for that failure was not to allow further hearsay. The trial judge stated, "I don't know that there's any hearsay," and ruled that Wright's counsel was barred from examining Officer Stevens concerning the description of the seller contained in the affidavit.

Wright testified in his own defense. As in the first trial, he denied selling cocaine. Wright also testified that he was not sure where he obtained the marked money; however, he recalled that he had received money from his brother in return for giving change and from people in the neighborhood for doing odd jobs.

## II.

"Under the 'curative admissibility' doctrine, the introduction of inadmissible or irrelevant evidence by one party justifies or 'opens the door to' admission of otherwise inadmissible evidence." United States v. Brown, 921 F.2d 1304, 1307 (D.C. Cir. 1990). The doctrine of "'curative admissibility' . . . allows otherwise irrelevant and incompetent evidence to repair the damage caused by previously admitted incompetent inadmissible evidence." Clark v. State, 629 A.2d 1239, 1244 (Md. 1993) (citing 1 Wigmore on Evidence § 15 (3d ed. 1940)). "[T]he aim of curative admissibility is to give the party harmed by the introduction of inadmissible evidence an opportunity to counter

the inferences that may be drawn from that inadmissible evidence."  1 <u>Wigmore on Evidence</u> § 15, at 749 (Tillers rev. ed. 1983).

The Supreme Court of Virginia adopted the doctrine of curative admissibility in <u>Graham v. Commonwealth</u>, 127 Va. 808, 103 S.E. 565 (1920).  The accused in <u>Graham</u> elicited testimony from witnesses regarding a collateral matter, the use of certain profanity by a policeman.  The Commonwealth did not object to the testimony and on rebuttal introduced evidence that the policeman was not in the habit of using profanity.  <u>Id.</u> at 824, 103 S.E. at 570.  Ruling the rebuttal evidence proper, the Supreme Court held that "'[a] party who draws from his own witness irrelevant testimony, which is prejudicial to the opposing party, ought not to be heard to object to its contradiction on the ground of its irrelevancy.'"  <u>Id.</u> at 825, 103 S.E. at 570 (citation omitted). The Court noted that "[t]his [is] a well established exception" in the field of evidence.  <u>Id.</u>

The Commonwealth asks this Court to sanction a trial practice that allowed one party to use hearsay evidence in contravention of a trial judge's order that explicitly barred the opposing party from using the same evidence.  The Commonwealth's attorney was fully aware of the trial judge's ruling barring the evidence because the Commonwealth's attorney sought the ruling. The question of the admissibility of the evidence was thoroughly discussed by the judge, the Commonwealth's attorney and defense

attorney at a hearing and again immediately prior to the commencement of trial. Nevertheless, the Commonwealth's attorney introduced hearsay evidence and then objected when Wright sought to use that same evidence on cross-examination to impeach the witness's testimony. Wright properly argues that when the Commonwealth elicited Officer Stevens' testimony on direct examination in contravention of the trial judge's ruling, the trial judge was required to allow Wright to present evidence of a similar nature to counter the inadmissible evidence.

Graham allows "evidence from the opposing side in rebuttal of the immaterial testimony which has been thus admitted." 127 Va. at 825, 103 S.E. at 570. The principle is well established that even if the opposing party's counter evidence is hearsay, it is admissible under the general application of the doctrine of curative admissibility, see Corley v. Andrews, 349 S.W.2d 395, 403 (Mo. Ct. App. 1961), because "the rule is that irrelevant, incompetent or illegal evidence may be admitted to rebut evidence of like character." St. Clair County v. Bukacek, 131 So. 2d 683, 690 (Ala. 1961). See also Clark, 629 A.2d at 1244. Indeed, Wigmore states that "all the evidence that properly serves to counter the inferences generated by the original evidence should be admissible. . . ." 1 Wigmore on Evidence, supra, § 15, at 750. Any other rule would result in manifest unfairness to the opposing party.

The majority asserts that a trial judge may not invoke the

doctrine of curative admissibility if counsel intentionally fails to object in the hope that the door will be opened for inadmissible evidence. Nothing in Graham so limits the rule. Indeed, the Court noted in Graham that the prosecutor failed to object to the testimony. 127 Va. at 824, 103 S.E. at 570. Furthermore, Wright's counsel was not the party who violated the trial judge's ruling and he had no reason to anticipate that the Commonwealth's attorney would have violated the ruling.

At trial, defense counsel stated that the testimony was unexpected and he did not object because he did not wish to call the jury's attention to the evidence. Counsel's reason for failing to object was explained at trial, was reasonable, and was apparently accepted by the trial judge. Moreover, during the Commonwealth's attorney's examination of Officer Stevens, the trial judge realized that she was violating the pretrial ruling because the trial judge indicated on the record that he "was waiting for an objection." Even with that awareness, however, the trial judge did not stop the prosecutor from violating the order that was entered at the commencement of trial.

The majority also finds irrelevant to the crime charged "whether appellant was named in the search warrant or was the person described in the affidavit." I disagree. By proving that Wright was named in the affidavit, the Commonwealth made the physical description of Wright relevant to this issue of guilt. Officer Stevens testified on direct examination that he told

Wright that Wright was named in the affidavit "as the person who was selling drugs."  Because Officer Stevens stated that, "[Wright] was named in the affidavit," evidence of the affidavit's description of the seller became vitally relevant to prove that the person described in the affidavit had identifying characteristics (clean shaven and light skinned) that did not describe Wright.  Officer Stevens, in contravention of the trial judge's ruling, branded Wright before the jury as a person who sold drugs and, thus, allowed the jury to draw the likely inference that Wright possessed and intended to distribute the drugs found in his aunt's residence.  Only by proving the affidavit's identifying characteristics could the defense cure the unfair prejudice.

To remove the prejudice to Wright that flowed from the introduction of Officer Stevens' hearsay testimony, Wright's counsel should have been allowed to prove that the description of the person identified in the affidavit was inconsistent with Wright's appearance.  "It is not error to admit hearsay evidence when it serves to clarify other hearsay evidence elicited by the opposition." Martinez v. State, 749 S.W.2d 556, 559 (Tex. Ct. App. 1988); Brown, 921 F.2d at 1307 (introduction of inadmissible evidence by one party allows opposing party to introduce otherwise inadmissible evidence).  In refusing Wright's counsel the right to cross-examine Officer Stevens on the inconsistent description, the trial judge denied Wright the opportunity to

rebut a misleading impression that flowed from the inadmissible evidence.

Wright had no other effective way to confront the prejudice that flowed from the Commonwealth's ploy. It is likely that the jury would have concluded that Wright's testimony or his aunt's testimony was self-serving. Moreover, it is reasonable to conclude that the jury would place greater weight on the identification by the informant than the testimony of a defendant's witnesses. Indeed, the record proves that when the evidence of the affidavit's description was considered by the jury in the first trial, the trial resulted in an outcome unfavorable to the Commonwealth.

Furthermore, on the direct examination of Officer Stevens, the Commonwealth's attorney put at issue the contents of the affidavit. When that was done, Wright was entitled to prove the context in which the document described and named the person who sold cocaine. It is fundamental that "'[w]hen part of a . . . transaction is put in evidence, the opposite party may rightfully call for the whole of it, although the evidence was in the first place illegal.'" Stockard v. State, 391 So. 2d 1060, 1064 (Ala. 1980) (citation omitted). The Commonwealth may not pick and choose parts of the affidavit and then, prohibit the defense from introducing the remaining parts. The evidence is clear that Officer Stevens' selective recitation of part of the affidavit had the potential to mislead because of the lack of context that

arose by excluding the descriptions of "clean shaven" and "light skinned," neither of which was descriptive of Wright.  <u>See</u> <u>Henderson v. United States</u>, 632 A.2d 419, 426 (D.C. 1993).

In sum, the trial judge's ruling was fundamentally unfair, contrary to rules of evidence, and reversible error.  Moreover, this Court should not sanction a party's blatant violation of the trial judge's ruling.  The majority avoids employing the doctrine of curative admissibility by finding the prior identification extraneous to the question of guilt.  The evidence clearly proves otherwise.  Therefore, I would reverse the conviction and remand for a new trial.