UNITED STATES of America, Appellee,

v.

Darryl NIMROD, Appellant.

No. 90–1389.

United States Court of Appeals,
Eighth Circuit.

Submitted April 12, 1991.

Decided Aug. 8, 1991.

Rehearing and Rehearing en banc Denied
Sept. 18, 1991.

Larry Pace, Kansas City, Mo., for appellant.

Peter Ossorio, Asst. U.S. Atty., of Kansas City, Mo., for appellee.

Before BOWMAN, Circuit Judge, ROSS, Senior Circuit Judge, and HANSON,* Senior District Judge.

ROSS, Senior Circuit Judge.

Darryl Nimrod (defendant) appeals his convictions of one count of conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846, and one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Defendant also appeals the sentence imposed by the district court.[1] We affirm the convictions and the sentence.

In July 1989, as part of an investigation targeting the drug-related activities of former Kansas City Police Officer Stacey Thomas, a government informant arranged for two purchases of crack cocaine. The controlled buys occurred on July 25 and 27, 1989, and involved the same four men on both occasions: Thomas, defendant (who is Thomas' cousin), the informant and Anton Groves. Thomas was arrested following the second buy and he implicated defendant and Groves.

At trial, Thomas testified against defendant. Defendant also testified extensively on his own behalf. The jury found defendant guilty of conspiracy and of distribution stemming from the July 27, 1989 incident, but not guilty of distribution stemming from the July 25, 1989 incident. This appeal followed.

■ First, defendant claims that the district court should have granted a mistrial based on the testimony of Detective Robert Maize, a government witness. In the context of explaining how he acquired a search warrant for defendant's apartment, Maize testified that "Stacey had told us in the interview who it was that made the delivery of cocaine and ... he made the statement that Darryl Nimrod had delivered it ... and Anton Groves [was] also ... with him ..." Defendant's attorney objected immediately and the district court called a recess during which defendant moved for a mistrial. The motion was denied. Defendant did not move to strike nor did he seek a limiting instruction to ameliorate any possible prejudice.

The following day at trial, defense counsel cross-examined Maize about the delivery of cocaine to Thomas' house:

Q: All right. Now would you review that report, Detective. Can you point to any specific statement made by Stacey Thomas anywhere that says affirmatively that Darryl Nimrod brought drugs to Stacey Thomas' house on the 25th of July?

A: No, it does not say that....

Q: Is there any specific statement that Stacey Thomas made in that report that says affirmatively that Darryl Nimrod and not Tony Groves was the one that

---

* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. The HONORABLE ELMO B. HUNTER, Senior United States District Judge for the Western District of Missouri.

brought the drugs to Stacey Thomas' house on the 27th?

A: No, it does not.

Detective Maize then emphasized that he did not claim to have first hand knowledge of who delivered the cocaine. Defendant claims that Maize's testimony was false and misleading and that this testimony deprived defendant of his right to due process and a fair trial.

We disagree with defendant. The decision of whether to grant a motion for mistrial is a matter within the sound discretion of the trial court. We find no evidence that the government knowingly presented false or materially misleading evidence. Here, the government presented evidence through its redirect examination of Maize which indicated that Maize had a good faith basis for making the remark concerning defendant's drug involvement. In fact, Maize made the statement at issue in the context of explaining how he acquired a search warrant for defendant's apartment. Our review of the record indicates that Maize never claimed to have first hand knowledge of who delivered the cocaine. Furthermore, Maize's testimony was sufficiently clarified on cross examination and on redirect examination so as to avoid any prejudice.

In any event, the district court was in the best position to evaluate any prejudice arising from Maize's explanation of how he came to apply for a search warrant, and we cannot say that the district court abused its discretion in denying defendant's motion for a mistrial. *United States v. Whitney*, 787 F.2d 457, 461 (8th Cir.1986).

■ Secondly, defendant points out that the government presented two witnesses during trial who gave conflicting testimony. The informant testified that defendant never handled any drugs or money and that defendant did not sell any drugs on July 25 or July 27. Thomas, on the other hand, testified that defendant handled the money on July 25 and July 27, and that on July 25, Groves handled the drugs. Based on the testimony of these two witnesses, defendant concludes that the government know-

ingly produced falsified testimony in order to get a conviction.

The government contends that it did not know what "really happened," but by fairly presenting both witnesses' stories to the jury, the jury was able to determine the credibility of each witness. We agree with the government. Here, we are merely dealing with conflicting testimony by witnesses, as there is no evidence that the government knowingly produced false testimony. *See United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir.1989), (defendants had burden to show that testimony was actually perjured; "mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony"); *United States v. Sherlock*, 865 F.2d 1069, 1082 (9th Cir.1989), (contradictory stories by witnesses did not give rise to presumption that prosecutor used false testimony where there was no allegation that prosecutor knew which story was true or false).

■ Finally, defendant argues that his sentence was improper. Because of defendant's prior second degree burglary convictions in Missouri, he was designated as a career offender pursuant to § 4B1.1 of the Sentencing Guidelines. This had the effect of increasing defendant's base level from 32 to 37 and increasing his Criminal History Category from level IV to level VI. However, defendant claims that second degree burglary is not a "violent felony" as defined by Missouri law, and therefore, should not have been considered in assigning the career offender status.

Defendant's position is without merit in light of the Supreme Court's decision in *Taylor v. United States*, — U.S. —, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). In *Taylor*, the Court considered the definition of the word "burglary" for purposes of the sentence enhancement provision of 18 U.S.C. § 924(e). The Court ruled that "burglary" under § 924(e) must have some uniform definition independent of the label employed by the various state criminal codes. *Id.* 110 S.Ct. at 2155. The Court rejected the argument that Congress meant to include only a special subclass of burgla-

ries that involve especially dangerous conduct. *Id.* 110 S.Ct. at 2156–58. Based on the *Taylor* decision, the inclusion of a prior conviction for second degree burglary in an enhanced sentence calculation was proper.

We also reject defendant's constitutional challenges of the Sentencing Guidelines. Defendant's argument that the Guidelines limit the sentencing judge's discretion to individualize a sentence and therefore violate the Due Process Clause is contrary to this court's holding in *United States v. Green,* 902 F.2d 1311 (8th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 353, 112 L.Ed.2d 316 (1990). In *Green,* we held that "the Guidelines [are] not subject to a due process argument on the grounds that they removed too much discretion from sentencing courts." *Id.* at 1313 (citing *United States v. Brittman,* 872 F.2d 827 (8th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 184, 107 L.Ed.2d 140 (1989)).

For the reasons stated above, we affirm defendant's convictions and sentence.