614 A.2d 949

**Robert Paul RAINVILLE**

v.

**STATE of Maryland.**

**No. 54, Sept. Term, 1991.**

Court of Appeals of Maryland.

Nov. 6, 1992.

John L. Kopolow, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Sarah E. Page, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

McAULIFFE, Judge.

In a difficult case involving charges that the defendant raped and otherwise sexually abused a seven-year-old girl, a State's witness testified that several weeks after the alleged assault the defendant was "in jail for what he had done to Michael [the victim's nine-year-old brother]." Defense counsel, who had earlier filed a motion *in limine* asking that the court order the prosecutor and the State's witnesses not to make any reference to charges or incidents involving the defendant and Michael, moved for a mistrial. The trial judge denied the motion, and instructed the jury to disregard the statement. The defendant appealed, claiming error in the denial of his motion *in limine* and in the refusal to grant a mistrial. The Court of Special Appeals affirmed in an unreported opinion, and we granted the defendant's petition for certiorari.

### I.

In June, 1989 the defendant rented a room from Elisa Turner (the mother) and her fiance, Murphy Miller, in a home in Berlin, Maryland. In addition to the defendant, the home was occupied by the mother and Murphy, and the mother's three children, Michael, age nine; Margaret (Peggy), age seven; and Tyler, a baby. At about 6:00 p.m. on the evening of 15 June 1989, Michael and Peggy asked their mother if they might go into the defendant's room to watch television with him. The mother obtained the defendant's permission and allowed the visit. According to the testimony of Peggy, at some later time the defendant lifted her from the floor onto his bed, placed his penis in her mouth, and then successively in her vagina and in her rectum.[1] She said Michael was initially asleep on the floor, but awoke when she screamed because the defendant had placed his penis in her vagina. She testified that the defendant first threw a pillow at Michael and then a knife, and that the defendant threatened to "chop off" the heads of her mother and her brothers. According to the testimony of her mother, Peggy left the defendant's room at about 9:00 p.m., kissed her mother goodnight, and retired to her own room; Michael left the defendant's room about one-half hour later and went to his room.

Peggy first told her mother about the assault approximately three weeks later. Her mother took her to the Maryland State Police Barrack in Salisbury, and then to Dr. Stephen Cooper for an examination. The defendant was charged with second degree rape, two counts of second degree sexual offense, child abuse, assault, and battery. The record indicates that just prior to Peggy's first report of the assault, the defendant was arrested for child abuse, third degree sexual offense, and battery of Michael. The

---

**1.** Peggy referred to the defendant's penis as his "pee-tom," to her vagina as her "cat," and to her rectum as her "butt." She linked her descriptions to parts of the body by reference to anatomically correct diagrams of a male and female.

details of the alleged assault of Michael do not appear in this record, except that the incident was also alleged to have occurred in June, 1989.

Separate indictments were returned against the defendant for the charges involving Peggy and those involving Michael. The State filed a motion to consolidate the indictments for trial. The defendant objected, contending he would be seriously prejudiced by the joint trial of charges relating to separate and distinct offenses. Judge Theodore R. Eschenberg of the Circuit Court for Worcester County denied the State's motion.

Thereafter, the defendant filed a motion *in limine*, arguing that evidence of alleged offenses involving Michael would be inadmissible in the prosecution involving Peggy, and requesting that the court "pass an order instructing the State's attorney and the State's witnesses in [the case involving Peggy] not to testify in their case in chief concerning any alleged incidences (sic) involving [Michael's case]." This motion was not heard until the case was called for trial before Judge Richard B. Latham and a jury. Judge Latham declined to grant the motion, stating that he would rule on evidentiary questions if and when they arose.

The "blurt" of testimony concerning the defendant's alleged assault upon Michael occurred when the mother was testifying about Peggy's first complaint of the assault. The prosecutor's question was appropriate—the mother's response was not.

PROSECUTOR: Now, if you would, describe for the gentlemen of the jury Peggy's demeanor when she told you about the incident?

THE MOTHER: She was very upset. I had noticed for several days a difference in her actions. She came to me and she said where Bob was in jail for what he had done to Michael that she was not afraid to tell me what had happened.

Defense counsel immediately objected and moved for a mistrial at a bench conference which followed, arguing that

the defendant's case had been "hopelessly prejudiced." The trial judge denied the motion, but said he would give a curative instruction, and asked whether the defendant would prefer that the instruction be given immediately or only during final instructions to the jury. Defense counsel asked for an immediate instruction, and the judge instructed the jury as follows:

> THE COURT: Gentlemen of the jury, the witness just alluded to some other incident that has nothing to do with this case, and you should not in any way consider what she has said, and you should put it out of your mind and forget about it. Does anybody have any questions about that? Okay. Let's go.

The jury acquitted the defendant of rape and of the charge of second degree sex offense involving anal intercourse, but convicted him of the second degree sex offense of fellatio, and of assault and battery. The defendant was sentenced to 15 years imprisonment, and this appeal resulted.

## II.

The State contends that the question of whether the trial court erroneously failed to grant the defendant's motion *in limine* is not reviewable by this Court. The State maintains initially that the trial court's deferral of the matter until such time as specific evidentiary questions might arise at trial did not constitute a ruling subject to review. Moreover, to the extent that the court's action may be viewed as a ruling, the State argues that under this Court's decision in *Prout v. State*, 311 Md. 348, 535 A.2d 445 (1988), a court's ruling on a motion *in limine* is not itself subject to review, but rather the admission or exclusion of the evidence is what is to be reviewed for error. *See also Eiler v. State*, 63 Md.App. 439, 445, 492 A.2d 1320 (1985) (motion *in limine* is a procedural step, not a ruling on evidence; "neither the grant nor the denial of such a motion constitutes reversible error").

The State's argument on this issue fails to differentiate the part of the motion which sought to exclude other crimes evidence from the part which requested an instruction to the State's witnesses not to discuss the other charges. The trial court deferred ruling on the former, preferring to decide any questions of admissibility, if and when they arose, in the context of evidence already adduced and of any proffers made. The defendant does not challenge that decision. However, by not instructing the State's witnesses to avoid testifying about the other allegations, at least until the court ruled otherwise,[2] the trial judge effectively denied the motion as to that request. It is this denial that petitioner asks this Court to review.

Maryland Rule 4–323(a) governs objections to the admission of evidence; subsection (c) applies to "any other ruling or order" and is therefore the controlling provision in this case:

> (c) Objections to Other Rulings or Orders.—For purposes of review by the trial court or on appeal of any other ruling or order, *it is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court.* ...

Maryland Rule 4–323(c) (emphasis added). *See also Prout v. State, supra,* 311 Md. at 357, 535 A.2d 445 (subsection (c) of Rule 4–323 governs "a 'ruling or order' other than one admitting evidence"). The defendant filed a written motion requesting an instruction to the State's witnesses, and the defendant's attorney noted that the court and counsel had discussed the motion off the record. It is clear that the defendant had made known to the court the action he desired the court to take. It is equally clear that the

---

**2.** The fact that it may be appropriate to defer a ruling on the admissibility of evidence until the trial has progressed sufficiently to provide a basis for a ruling does not compel the court to risk that the evidence will be improperly introduced in the interim. The court is free to instruct witnesses to avoid certain testimony until such time as the court finds that a proper foundation has been laid.

judge's failure to instruct the State's witnesses before trial was necessarily a decision denying a portion of the defendant's request. The question of whether the trial court erred in failing to instruct the State's witnesses as requested is therefore properly subject to review by this Court.

■ The defendant contends that the trial court's failure to instruct the witnesses as requested was error because as a result of "favor[ing] a 'wait-and-see' approach over a simple and prudent prophylactic measure, irreparable harm was done." The defendant argues that the ruling and instruction requested in his motion are consistent with this Court's view of the function of a motion *in limine:*

> [T]he real purpose of a motion *in limine* is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably infect the fairness of the trial.

*Prout v. State, supra,* 311 Md. at 356, 535 A.2d 445.

Similarly, the defendant cites a number of cases demonstrating that "in a variety of contexts courts have approved *in limine* orders directing witnesses to avoid specified testimony." *See, e.g., Cook v. Philadelphia Transp. Co.,* 414 Pa. 154, 199 A.2d 446, 449 (1964) (court properly instructed witnesses not to mention that plaintiff came out of an establishment named "Crazy Bar" before the accident, there being no evidence of her intoxication); *State v. Saavedra,* 103 N.M. 282, 705 P.2d 1133, 1135 (1985) (court "directed the parties to make certain that no mention was made of anyone's prior record"). Yet the defendant cites no case where the denial of a requested instruction has been held to be reversible error. In fact, the defendant's own conclusion is simply that "[a]n *in limine* order restraining the State's witnesses from revealing the case involving Michael was well within the court's power."

The defendant offers no more particular support for his assertion that the trial judge erred by failing to instruct the witnesses not to mention evidence of other crimes. His argument essentially is that it was "not conceivable" that

the evidence could be admitted and therefore there was "no reason not to warn [the witnesses] against giving such testimony."

Certainly, trial judges have wide latitude in the conduct of a trial, and may often find it prudent to direct that witnesses be warned against the mention of evidence that does not then appear to be admissible, and which may be highly prejudicial if made known to the jury. In other instances, trial judges are well advised to explicitly specify the form in which questions are to be asked in order to avoid unfair prejudice. In *Prout,* for example, after determining which of the prior convictions of the State's witness the court would permit to be shown for purposes of impeachment, the trial judge cautioned defense counsel:

[O]n cross-examination when you ask her about her prior convictions, do not ask her what she has been convicted of. Lead her and say, 'Is it not true that you have been convicted of theft and shoplifting?' *et cetera,* so ... we will not inadvertently get into the other inadmissible convictions.

311 Md. at 353, 535 A.2d 445.

Counsel are often in a better position than the trial judge to anticipate the possibility of a witness's inadvertent reference to inadmissible and prejudicial evidence. Plaintiffs' counsel often caution their clients against any mention of insurance. Prosecutors who have suffered pretrial suppression of evidence will inform their witnesses of that fact so there will be no inadvertent reference to the excluded material.

In the case before us, the State was aware that Judge Eschenberg had denied its motion for a joint trial of indictments arising from the two incidents. When the defendant filed his motion *in limine,* the State did not suggest that evidence of the defendant's alleged assault upon Michael on a separate occasion would be admissible in this prosecution. *See Harris v. State,* 324 Md. 490, 500, 597 A.2d 956 (1991) (evidence of prior bad acts ordinarily inadmissible unless

substantially relevant for reasons other than proof of criminal character and possessed of probative force substantially outweighing its potential for unfair prejudice). Even if the State had proffered that it might later be able to demonstrate the admissibility of evidence involving Michael's case, the trial judge could have ordered the prosecutor to instruct his witnesses not to mention the contested evidence until further proceedings made a definitive ruling possible. In a case such as this, there would be much to gain and nothing to lose by following that course of action.

What we have said does not mean, however, that the trial judge committed reversible error in refusing to require that the witnesses be so instructed. Although we may agree that defense counsel prudently sought the warning, and that it would have been the better course of action for the trial judge to grant that part of the motion, or for the prosecutor to instruct the State's witnesses even in the absence of court direction, the question of whether a new trial must be granted hinges solely on whether the trial judge abused his discretion in denying the motion for a mistrial once the inadmissible evidence was placed before the jury, and not on whether he should have granted the motion *in limine*. If the inadmissible evidence had never been mentioned, or if, even though the evidence was disclosed, the totality of circumstances showed that the trial judge did not abuse his discretion in denying the motion for a mistrial, any error in denying the request that the witnesses be instructed would be harmless.

### III.

We turn, therefore, to the central and dispositive issue in this case—whether the trial judge erred in denying the defendant's motion for a mistrial.

The State does not argue that the mother's testimony informing the jury that the defendant was in jail "for what he had done to Michael" was admissible. Rather, the State maintains that defendant's motion for a mistrial was proper-

ly denied because the trial judge issued an immediate cura-
tive instruction after the remark. The State further argues
that the fact that the defendant was convicted of some
charges and acquitted of others makes it clear that the jury
applied the proper standard and did not allow the mother's
statement to color their verdict.

A remark of the sort made by the mother has great
potential for prejudicing the jury. This Court has acknowl-
edged that

> a prior conviction which is similar to the crime for which
> the defendant is on trial may have a tendency to suggest
> to the jury that if the defendant did it before he probably
> did it this time.

*Prout v. State, supra,* 311 Md. at 364, 535 A.2d 445. The
mother's testimony that the defendant was "in jail for what
he had done to Michael" was particularly prejudicial be-
cause the defendant had not been convicted of any sexual
offenses against Michael, but was being held in jail pending
trial on those charges. Moreover, it is highly likely that the
jury assumed that "what [the defendant] had done to Mi-
chael" was a crime similar to the alleged crimes against
Peggy.[3] *See State v. Goodrich,* 432 A.2d 413, 417 (Me.
1981) (in prosecution for rape of ten-year-old daughter,
mother's reference to unspecified incident " 'with the other
girl' informed the jury that the defendant may have been
involved in unlawful sexual activity with someone other
than the prosecutrix, thus unfairly prejudicing the jury
against him").

---

**3.** We find meritless the State's assertion that the statement in this case
was "ambiguous" in a way similar to the statement in *Jones v. State,*
310 Md. 569, 530 A.2d 743 (1987), *sentence vacated,* 486 U.S. 1050, 108
S.Ct. 2815, 100 L.Ed.2d 916 (1988). In *Jones,* a witness testified that
she had seen the defendant before when she "went to visit him with
[her] husband at Lewisburg." *Id.* at 587, 530 A.2d 743. This Court
held that although it may be generally known that there is a federal
prison in Lewisburg, there was insufficient evidence of prejudice to
warrant a mistrial. *Id.* at 588, 530 A.2d 743. Ms. Turner's statement
that the defendant was "in jail for what he had done to Michael" can
hardly be said to be as ambiguous as a reference to a visit at
Lewisburg.

As we recently stated in *State v. Hawkins,* 326 Md. 270, 276, 604 A.2d 489 (1992), "[t]he question is one of prejudice to the defendant." While the State does not seriously contest the prejudicial nature of the statement, it argues that the trial judge's immediate instruction to the jury to disregard the testimony cured whatever prejudice had been threatened. This Court has identified several factors to be considered in determining "whether the evidence was so prejudicial that it denied the defendant a fair trial;" that is, whether "the damage in the form of prejudice to the defendant transcended the curative effect of the instruction, ..." *Kosmas v. State,* 316 Md. 587, 594, 560 A.2d 1137 (1989). *See also Guesfeird v. State,* 300 Md. 653, 659, 480 A.2d 800 (1984). Although the statements at issue in both *Kosmas* and *Guesfeird* were references to a lie detector test, the factors applied in those cases are equally applicable for purposes of deciding whether an accused's right to a fair trial was adequately protected by a jury instruction following a different kind of inadmissible and prejudicial testimony.

In *Guesfeird,* the Court set forth the following factors to be considered in determining whether a mistrial is required:

whether the reference to [the inadmissible evidence] was repeated or whether it was a single, isolated statement; whether the reference was solicited by counsel, or was an inadvertent and unresponsive statement; whether the witness making the reference is the principal witness upon whom the entire prosecution depends; whether credibility is a crucial issue; [and] whether a great deal of other evidence exists....

*Id.* 300 Md. at 659, 480 A.2d 800. In *Kosmas,* we made it clear that "these factors are not exclusive and do not themselves comprise the test." 316 Md. at 594, 560 A.2d 1137.

The State argues that applying these factors demonstrates that a mistrial is not warranted; the reference was isolated, unsolicited, not made by the principal witness, not dispositive of the defendant's credibility, and not affecting a

crucial issue. The defendant, on the other hand, claims that those factors indicate that a mistrial should have been granted. He notes that the references in both *Kosmas* and *Guesfeird* were isolated and yet the harm was held irremediable. He also argues that the *Kosmas* Court assessed some blame to the prosecution for not avoiding questions which would elicit this response from his witness, and that in this case the judge's inaction on his motion even more clearly contributed to the introduction of inadmissible and prejudicial testimony. Finally, he maintains that the mother's statement was the only evidence which tended to corroborate Peggy's testimony.

This was a difficult case. The State's case rested almost entirely upon the testimony of a seven-year-old girl. The defendant adamantly denied ever having touched her. Dr. Stephen Cooper, the pediatrician who examined Peggy three weeks after the alleged assault, testified he received a history from Peggy and her mother that the defendant had "put his penis inside her mouth and tried to have anal intercourse with her." Apparently, no history of vaginal intercourse was given. On examination, the doctor found no signs of irritation, no bruising of the vagina, and no hymenal tearing or signs of penetration. He did find "a small anal fissure" which he further described as "a small split in the skin generally ... around the anal opening." He said such a fissure could result from "a multitude of causes, including a child who perhaps strained very hard at stool or who was constipated, from perhaps local irritation, or perhaps from trauma."

Peggy said that Michael observed part of the assault upon her, and that the defendant threw a pillow and a knife at Michael. Michael told the investigating State trooper that he had seen the defendant on top of Peggy and it "looked like he was humping her." Michael testified, however, that on the evening in question he was on the defendant's bed the entire time he was in the room, that he alternately slept and watched television, and that Peggy was on the floor at all times when he was awake. He said

that he and Peggy slept that night in the defendant's room. He did not testify to any contact between the defendant and Peggy, or that the defendant threw anything at him, or made any threats.

Peggy testified she did not bleed as a result of the assault. The investigating officer testified that Peggy told him she bled when the defendant inserted his penis in her vagina. Peggy also testified that the defendant's penis was hard when he put it in her mouth. She told the investigating officer, however, that the defendant's penis was soft at that time. Peggy testified that she screamed when the defendant put his penis in her vagina. Her mother, who said she was on the same floor of the house, one or two rooms away, did not hear any screams. The mother testified she was at home that night. Michael apparently told the officers his mother had gone to the store, and the mother told Dr. Cooper she was not at home when the assault occurred.

According to the mother, when Peggy left the defendant's room at about 9:00 p.m. she kissed her mother goodnight and went to bed. Peggy made no complaint at that time and her mother did not testify to having observed anything unusual about Peggy's appearance or demeanor.

There was evidence of some antagonism between the defendant and the mother. The defendant testified that the mother was jealous of the time her fiance spent with the defendant, his friend of some years. The defendant said "she didn't like me too good" and "she wanted me out of the house." The mother testified "she did not care for his drinking."

Under these circumstances, informing the jury that the defendant was "in jail for what he had done to Michael" almost certainly had a substantial and irreversible impact upon the jurors, and may well have meant the difference between acquittal and conviction.

We are not persuaded that the trial judge's curative instruction could be effective under the circumstances of

this case. In *Bruton v. United States,* 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968), the Supreme Court recognized that

> there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored.

We find the instant case to be quite similar to *Kosmas,* where we reversed the conviction because

> the State's evidence that does not hinge at least in part upon the determination of [the defendant's] credibility is hardly of sufficient strength to permit us to find beyond a reasonable doubt that the inadmissible evidence did not in any way influence the verdict.

316 Md. at 598, 560 A.2d 1137.

It is highly probable that the inadmissible evidence in this case had such a devastating and pervasive effect that no curative instruction, no matter how quickly and ably given, could salvage a fair trial for the defendant. The defendant is not to blame—he anticipated the possibility of just such a problem, and prudently attempted to avoid it. Adhering to the principle that "an accused may be convicted only by evidence which shows that he is guilty of the offense charged, and not by evidence which indicates his guilt of entirely unrelated crimes, ..." *Ross v. State,* 276 Md. 664, 669, 350 A.2d 680 (1976), we reverse and remand for a new trial.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR WORCESTER COUNTY AND TO REMAND THE CASE TO THAT COURT FOR A NEW TRIAL; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY WORCESTER COUNTY.