642 A.2d 276

Guy COFFEY

v.

STATE of Maryland.

No. 1333, Sept. Term, 1993.

Court of Special Appeals of Maryland.

June 7, 1994.

Shannon E. Avery, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Argued before MOYLAN, ALPERT and CATHELL, JJ.

ALPERT, Judge.

This appeal arises out of the second trial of what unfortunately has become an unremarkable occurrence in our society, a routine "drug bust." The facts as adduced at trial were as follows. Officer Daniel Brown[1] of the Baltimore City Police Department testified that on the morning of December 13, 1990, he and Officer Kevin Sewell[2] were in a marked patrol car in the Eastern district of Baltimore City. The officers were stopped at a traffic light when they looked into an alley and observed what they perceived to be a Controlled Dangerous Substance (CDS) sale. Specifically, the officers saw Guy Coffey, appellant, taking money from another man (Michael Gee) in exchange for a glassine bag of white powder. When the traffic light changed, Officer Brown proceeded to intercept appellant and the other individual by driving around the block to the other side of the alley. Officer Brown stated that appellant and the other individual were rather startled to see the police vehicle at the other side of the alley and immediately ran in different directions. Officer Brown chased appellant and eventually found him hiding behind an oil tank. Officer Brown attempted to place appellant under arrest but allegedly appellant resisted and elbowed the officer several times. Eventually, appellant was subdued and placed under arrest. In the meantime, Officer Sewell arrested the other individual.

In July, 1991, appellant and Gee were tried and convicted by a jury in the Circuit Court of Baltimore City. We reversed the trial court and remanded for a new trial. *Gee and Coffey*

---

1. The Officer was qualified as an expert in the field of narcotic investigation and detection of street narcotic activity including the packaging and distribution of narcotics. The officer testified that as of the date of the incident in question, he had been working for the Baltimore City Police Department for just over two years.

2. Officer Sewell was admitted as an expert in the field of the detection of street narcotics activity including the packaging, distribution and pricing of CDS. The officer testified that he had worked for the Baltimore City Police Department for approximately five and a half years.

*v. State*, 93 Md.App. 240, 611 A.2d 1081 (1992).[3] Subsequently, appellant was tried again and convicted of possession of heroin and sentenced to three years imprisonment. On appeal, he asks us:

> Did the trial court abuse its discretion in refusing to declare a mistrial after a police officer testified that Appellant had been found guilty in an earlier trial in this case?

We are constrained to respond in the affirmative and remand for a new trial.

### The First Remark—Prior Trial

In the instant case, there were two instances where either Officer Brown or Officer Sewell remarked about the prior trial. Each instance related to evidence that had been presented at the first trial and was subsequently destroyed. The following colloquy, which occurred immediately before the presentation of evidence is instructive with respect to the trial court's exercise of discretion:

> THE COURT; Any reason why we can't proceed with the jury at this time, Mr. Lautz?
>
> MR. LAUTZ [defense counsel]: No, Your Honor.
>
> THE COURT: Call the matter for the record, please, so we know what we're talking about.
>
> MR. ROSE: State of Maryland calling the case of Guy Coffee, 891074007. Shawn Rose for the State.
>
> MR. LAUTZ: Thad Lautz, Your Honor, for Guy Coffey.
>
> MR. ROSE: Now in the original case, Your Honor, the photographs of the drugs were entered into evidence. They're not in the court file anymore. I'm not sure if they were destroyed or what.
>
> I've sent my officer to see if he can find some more photographs of the evidence.
>
> THE COURT: So what do you want me to do? Now that you've told me, you haven't asked me to do anything.

---

3. There we held that the accused were denied effective assistance of counsel.

MR. ROSE: That is—that is the situation.

THE COURT: Thank you.

MR. LAUTZ: May we approach, Your Honor?

THE COURT: For what? Tell me from where you are. . . .

THE COURT: [Are you] [a]sk[ing] for [a] dismissal because there is no photograph of the drugs?

MR. LAUTZ: There are no drugs, there is no photograph.

THE COURT: Say what?

MR. LAUTZ: There are no drugs. Are they going to be able to produce the drugs?

THE COURT: I don't know.

MR. ROSE: That's why they've gone to the—

THE COURT: I don't know. If they can't produce the drugs or whatever, you make the proper motion, but it's kind of late—kind of premature at the moment, don't you think?

MR. LAUTZ: I love it.

THE COURT: I don't understand what you're saying Mr. Lautz. You're saying because there is no photograph there can be no case?

MR. LAUTZ: There are no photographs of the drugs.

THE COURT: There is no photograph of my birth. That doesn't mean I wasn't born.

MR. LAUTZ: But you're sitting there. You're sitting there it's accepted but there are no drugs sitting here.

THE COURT: Do you—do you—I'm confused so straighten me out.

There was an arrest, there were drugs, they were analyzed, there is a chemist report, there is no photograph

MR. LAUTZ: There is no photograph and there is no physical evidence. There is no photograph. There is no physical evidence. This chemist report means nothing because they will not be entering the chemist report into evidence.

MR. ROSE: Why not?

THE COURT: Why not?

MR. LAUTZ: I have already filed my omnibus motion in that I've asked for the chemist, I've asked for chain of custody.

THE COURT: The chemist will be here.

MR. LAUTZ: But he's going to have to—the State is going to have to produce other evidence other than the chemist coming in saying I analyzed something. They're going to have to have chain of custody. They cannot show—

THE COURT: Why don't you let Mr. Rose try his case and when he fumbles make the [motion]. Until then this [is] all hypothetical.

MR. LAUTZ: I know.

During the trial, Officer Brown testified on behalf of the State. On cross-examination, appellant's counsel questioned him regarding the CDS that the officers recovered. Appellant's counsel asked the officer whether he had a "picture of [the CDS]." The officer replied that he did not and that a negative might exist somewhere in police headquarters. Questioned further regarding the original, the following exchange transpired:

MR. LAUTZ: what about the original that's supposed to be offered into evidence in the courtroom, where is that?

OFFICER BROWN: Well, the first time the picture and the photograph of the CDS were brought into the first trial—

MR. LAUTZ: Sir—Oh my goodness. Approach your honor?

THE COURT: Denied.

MR. LAUTZ: Make a motion, Your Honor.

THE COURT: Denied. You opened the door. Move right along please, Mr. Lautz.

THE COURT: Next question please.

MR. LAUTZ: All right, let's open the door then, might as well. There is supposed to be evidence presented at trial,

any trial, this trial, previous trial, you got to have evidence and it's not here, right?

On redirect, Officer Brown was asked the following:

MR. ROSE: Now, during the cross-examination the defense attorney questioned about photographs and items of evidence that were—and why you don't have them today. No other—in an earlier year were those photographs and items like the drugs entered into evidence?

Over defense counsel's objections, Officer Brown responded that evidence is generally destroyed after a trial.

### The Second Remark—Prior Trial and Conviction

In attempting to establish the chain of custody of the subject CDS, the State asked Officer Sewell whether the CDS and the photographs were submitted into evidence at an earlier trial. The following exchange occurred when the State attempted to introduce into evidence the laboratory report of the items seized by the officers:

MR. LAUTZ: Also they do not have the CDS. We do not have the CDS, we do not have the photograph of the CDS and therefore that is part of the chain that has to be met here. The State is never going to be able to produce that.

THE COURT: Where in the law does it state that?

MR. LAUTZ: That they have to have the evidence in here? You see this is not proving anything. All this is doing is saying that this piece of evidence that I bring—

THE COURT: I know exactly but we have two kinds of ways we prove things in courts of law, by direct evidence and circumstantial. This what is submitted, the chemist says this is what I examined and it's heroin. You're trying to tell me I'm supposed to throw the case out now because the actual dope is not in the courtroom?

MR. LAUTZ: Yes I am because. These things are not relevant unless you have the actual evidence. All this report does is saying—

THE COURT: You mean State's Exhibit Number One.

MR. LAUTZ: Exactly. All that State's Exhibit Number One is supposed to do and does in any case is says this piece of evidence is—this piece of evidence is recovered in this case and it—you can tell by looking at it—it is heroin. Without having that piece of evidence in here this is not relevant. Absolutely not relevant.

THE COURT: As I understand the evidence in this case so far, following the first trial in this case the evidence was destroyed.

MR. LAUTZ: That's—

THE COURT: Is that my understanding of what happened to it?

MR. LAUTZ: We don't know that.

THE COURT: Somebody testified to that.

MR. LAUTZ: But I objected. Somebody testified to it and I objected because he has no basis of knowledge.

THE COURT: That's the only evidence we have in the case.

MR. LAUTZ: We don't have any evidence at all that it was destroyed.

THE COURT: We don't have any evidence—

MR. LAUTZ: That it was destroyed. He said it probably was.

THE COURT: But that's the only evidence we have in the case as to what happened to it so far.

MR. LAUTZ: I would submit that evidence is useless in making a decision as to whether it was or wasn't.

THE COURT: Okay. Anything else?

MR. LAUTZ: Since it is not going to be in here, this is not quite relevant yet. Not yet. Until they bring it in. Bring in a photo.

THE COURT: They are never going to bring it in so what you're asking me to do is dismiss the case because the State can't present the corpus delicti which is the drugs themselves.

MR. LAUTZ: Absolutely.

THE COURT: All right. Anything else?

MR. LAUTZ: No.

THE COURT: The objection and request of defense is overruled and denied.

Officer Sewell's testimony regarding the events of December 13, 1990, essentially reiterated that of Officer Brown. Sewell also testified that he "submitted the glassine bags containing the white powder [recovered from Mr. Gee] and the money that was recovered from Mr. Coffey" to the evidence control unit at police headquarters. The officer testified that these items were photographed and that he filled out some paper work so that the alleged CDS could be analyzed at the crime lab. Additionally, the officer identified "a chain of evidence laboratory report" he had filled out. The prosecutor, over objection, then elicited from the officer that an earlier trial was held in the same matter and that the photographs and drugs were submitted into evidence. The following colloquy then ensued:

MR. ROSE: Since that time, officer, have you had an occasion to check to see whether those photographs or drugs—the drugs still existed?

MR. LAUTZ: Objection.

THE COURT: Overruled.

OFFICER SEWELL: Yes, I have.

MR. ROSE: And when did you check?

OFFICER SEWELL: I—

MR. LAUTZ: Objection. May I have a continuing objection, Your Honor?

THE COURT: You may.

MR. LAUTZ: As to this line.

OFFICER SEWELL: Yes, I checked after the *conviction of the defendant in the first trial.*

MR. ROSE: All right, and what happened? And were you able to determine whether or not those things still existed?

OFFICER SEWELL: *After the defendant was found guilty in the first trial,* our policy in the Baltimore City

police department is whether the drugs should still be kept around. At that particular time, I said—I submitted the report saying No, you can go ahead and destroy the evidence.

(emphasis added). After the officer finished testifying, the Court summoned counsel to the bench and held an on-the-record conference. The Court informed counsel that it was concerned by the officer's disclosure of appellant's prior conviction on the same counts. Specifically, the following exchange transpired:

THE COURT: During the course of the examination of this witness as to the nonproductivity of the actual heroin and/or the photograph in this case, you [defense counsel] made a continuing objection [to the Prosecutor's] line of questioning.

During the course of that questioning it was disclosed by the witness that following the defendant being found guilty in the first trial, the witness destroyed the exhibit or gave permission [that] the exhibit be destroyed.

Because you have a continuing objection, I want to clarify the record at this point or at least find out what if anything you want me to do.

The questioning from the State's Attorney was along the line as to why the exhibit and/or the photograph are no longer available.

It has now been disclosed to this jury that in the first trial it was a guilty finding and that is what led the witness to disclose—or just to have the evidence destroyed.

In light of that, your continuing objection of which I didn't know he was going to say guilty or maybe you [the prosecutor] didn't either.

MR. ROSE: Neither did I.

THE COURT: My question to you [defense counsel] is in light of your continuing objection on a related line in which that fact was elicited, what if anything do you want me to do about it?

Defense counsel contended that the court should grant a mistrial. The court denied this motion; instead the court determined that it would give curative instructions because it concluded that the "convicted" and "guilty" disclosures were not "intentional and there have been other references throughout to the other hearing, et cetera." Thus, the court concluded that in its opinion, because several references had been made to the prior trial, the curative instructions would negate any prejudice emanating from the two Officer's disclosures. In view of the court's ruling on the motion for mistrial, defense counsel did not oppose the court's decision to give curative instructions. The court then proceeded to give the following curative instructions:

Members of the jury, from this witness you have heard certain references to a previous finding as to the guilt or innocence of the defendant in another proceeding prior to today.

You are to disregard any testimony on the issue of any previous finding of guilt or not guilty in reference to the defendant in this case.

As far as this court is concerned and you are concerned, this is a trial de novo. What that means in lay[person]'s terms is this is the first trial as if a previous trial never happened.

That is the posture for you, that is the posture for the State, the defense and the court.

That information was elicited during the course of this trial from this witness only for the limited purpose of explaining to you why no photographs of the money or the narcotics [ ] alleged in this case exists at this time. And you are to consider such testimony as to the previous trial only for the limited purpose as an explanation to you as to why those exhibits and/or narcotics are not available at this time.

## Standard of Review

It is well established that the decision to grant a motion for a mistrial rests in the discretion of a trial judge and our

review is limited to determining whether there has been an abuse of discretion. *State v. Hawkins,* 326 Md. 270, 277, 604 A.2d 489 (1992). The question is one of prejudice. *Rainville v. State,* 328 Md. 398, 408, 614 A.2d 949 (1992); *Hawkins,* 326 Md. at 276, 604 A.2d 489. Recently, in *Burks v. State,* 96 Md.App. 173, 187, 624 A.2d 1257, *cert. denied,* 332 Md. 381, 631 A.2d 451 (1993), we stated that a mistrial is "an extreme sanction that sometimes must be resorted to when such overwhelming prejudice has occurred that no other remedy will suffice to cure the prejudice." Additionally, where the motion for mistrial is denied and the trial judge gives a curative instruction, we must determine " 'whether the evidence was so prejudicial that it denied the defendant a fair trial'; that is, whether 'the damage in the form of prejudice to the defendant transcended the curative effect of the instruction.' " *Rainville,* 328 Md. at 408, 614 A.2d 949 (quoting *Kosmas v. State,* 316 Md. 587, 594, 560 A.2d 1137 (1989)); *see also Hawkins,* 326 Md. at 277, 604 A.2d 489.

## Denial of the Motion for Mistrial

On appeal, appellant contends that the trial court committed reversible error by refusing to declare a mistrial after Officer Sewell testified that the appellant had been found guilty in an earlier trial. Appellant explains that even if defense counsel had inadvertently "opened the door" regarding the Brown disclosure, the door was not open regarding the Sewell disclosure about the prior conviction. Appellant asserts that Officer Sewell's disclosure of his prior trial and conviction on the very same charges on which he was being retried was manifestly prejudicial. He notes that this disclosure is similar to the one in *Rainville,* 328 Md. at 411, 614 A.2d 949, where the Court of Appeals stated that

it is highly probable that the inadmissible evidence in this case had such a devastating and pervasive effect that no curative instruction, no matter how quickly and ably given, could salvage a fair trial for the defendant. The defendant is not to blame—he anticipated the possibility of just such a problem, and prudently attempted to avoid it.

Accordingly, he would have us hold that the trial court erred in not granting his motion for a mistrial.

Here, the State produced the testimony of two officers, both of whom were qualified as experts, who observed appellant engage in what they perceived to be a CDS sale. When the officers confronted appellant and Gee, both of them tried to run away from the officers. Officer Brown pursued appellant and arrested him. The State also introduced into evidence the chain of evidence report/laboratory report that indicated that the item seized from Gee was heroin. Officer Sewell identified this report as the one he had filled out to process the items recovered from Gee. The State also introduced the testimony of Fuad Jarjoura, an expert in the field of CDS analysis and identification employed by the Baltimore City police laboratory, who testified that the seized item was heroin.

In other words, under normal circumstances, the jury had sufficient facts before it so that it could determine from the facts alone whether the appellant was guilty as charged. But, in this case, the jury did not make that determination from the facts alone. Instead, Officer Sewell, an experienced member of the Baltimore City Police Department, blurted out twice that appellant had been tried and found guilty previously on the very same charges. Commendably, the court recognized the possible prejudice emanating from this disclosure and held an on-the-record discussion with counsel to discuss what, if anything, should be done under these circumstances. The court concluded that curative instructions would overcome any prejudice to the appellant. We, therefore, are faced with the question as to whether, in so doing, the trial court abused its discretion. Specifically, we must determine whether in a criminal case, where a defendant is retried on the same charges, does an experienced police officer's mention of the defendant's previous trial and conviction for those same charges ordinarily warrant a mistrial. We conclude that it does and explain.

At the outset, we note that the coveted "case in point" has eluded us; cases where the Court of Appeals has held that a

mistrial was necessary are, however, instructive in our analysis. The Court of Appeals has on numerous occasions addressed conduct that constitutes grounds for a mistrial. In *Poole v. State*, 295 Md. 167, 193–94, 453 A.2d 1218 (1983), the Court addressed whether a mistrial should have been granted because a State's witness responded to the prosecutor's question by stating "I remember the *last trial, the last time* I said, it was a safari coat." (emphasis added) The Court concluded that reversible error was not committed because even though the remark may "have conveyed the fact of a previous trial to the jury," it did not result in an error that "was necessarily prejudicial to the [defendant's] right to a fair trial." *Id.* at 194, 453 A.2d 1218. The Court explained its decision by quoting from *Wilhelm v. State*, 272 Md. 404, 431, 326 A.2d 707 (1974) (quoting *People v. Mackins*, 17 Ill.App.3d 24, 308 N.E.2d 92, 110 (1974)) that:

> [T]he mere occurrence of improper remarks does not by itself constitute reversible error. There must be an additional element for this conclusion to be reached. If we cannot say that the assailed argument constituted "a material factor in the conviction"; must have resulted in "substantial prejudice to the accused" or that "the verdict would have been different had the improper closing argument not been made . . .", then we must necessarily conclude that no prejudicial error resulted from the argument.

(Citations omitted).

In *Guesfeird v. State*, 300 Md. 653, 659, 480 A.2d 800 (1984) the Court explained that, in ascertaining whether references to a lie detector test required a mistrial, the following factors be considered:

> whether the reference to [inadmissible evidence] was repeated or whether it was a single, isolated statement; whether the reference was solicited by counsel, or was an inadvertent and unresponsive statement; whether the witness making the reference is the principle witness upon whom the entire prosecution depends; whether credibility is a crucial issue; [and] whether a great deal of other evidence exists.

In that case, because the sole prosecution witness made an inadvertent reference to having taken a lie detector test, the Court noted that "[t]he unavoidable inference for the jury to make is that if she took the test, she passed and was telling the truth." *Id.* at 666, 480 A.2d 800. Thus, the Court held that the defendant was prejudiced and the trial court erred in denying his motion for a mistrial. *Id.* at 666–67, 480 A.2d 800. Similarly, in *Rainville,* 328 Md. at 410, 614 A.2d 949, the Court held that the prejudice emanating from inadmissible evidence was not cured by curative instructions and "may well have meant the difference between acquittal and conviction."

We recognize that, contrary to the case *sub judice,* there was a dearth of evidence in *Guesfeird* and *Rainville* and that here the trial court issued curative instructions, which might negate Officer Sewell's disclosures' prejudicial impact. The Supreme Court, however, noted in *Bruton v. United States,* 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968) that

> there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored.

Recognizing the inherent limitations of a jury to disregard highly prejudicial testimony, Professor Lynn McLain states that "[t]he efficacy of an instruction to disregard is questionable. Not only may jurors not be able to erase from their minds the inadmissible information they have heard, but an instruction to disregard may emphasize it." Lynn McLain, *5 Maryland Evidence,* § 130.10, 30–31 (1987 & Supp.1994) (footnotes omitted). Based upon our review of the testimony, we conclude that this is such a case.

Our decision is consistent with *Bailey v. State,* 521 A.2d 1069 (Del.1987) (cited with approval in *State v. Crutchfield,* 318 Md. 200, 211, 567 A.2d 449 (1989)). In that case, the trial court declared a mistrial, *sua sponte,* because three witnesses made references to the defendant's prior trial and the third

witness referred to the defendant's prior conviction on the same charges for which he was being retried. In affirming the trial court's decision, the Supreme Court of Delaware stated that

> we are hard pressed to think of anything more damning to an accused than information that a jury had previously convicted him for the crime charged. It seems unreasonable to expect a juror to divorce from his deliberative process, knowledge that a defendant had been previously tried and convicted, and following a reversal has been once again subjected to prosecution. The mere expenditure of so much time and expense on the part of the state might lead the average lay person to assume that such a defendant must, in fact, be guilty.

*Bailey,* 521 A.2d at 1076. (quoting *Hughes v. State,* 490 A.2d 1034, 1044 (1985)).[4] *See Weber v. State,* 501 So.2d 1379, 1382–83 (Fla.App.1987) (reversing the trial court because the jury learned that defendant was previously convicted and sentenced for the same crimes and that his convictions and sentences had been reversed on a technicality); *Arthur v. Bordenkircher,* 715 F.2d 118, 119–20 (4th Cir.1983) (stating that reversible error was committed because the jury was instructed by the court that the defendant "had already been

---

**4.** In a footnote the Court explained that

> We continue to adhere to the view that juror knowledge of a prior conviction that comes during the course of subsequent proceedings is cause for a mistrial *ipso facto.* However, when a juror or jury acquires knowledge of "prior proceedings" for the first time during a subsequent trial, even though no result is mentioned, it may also warrant the declaration of a mistrial. Jurors in criminal cases may quickly conclude that the primary reason for a second trial is not a prior mistrial but reversal of a prior conviction after appeal. Each situation and possible solution must be scrupulously reviewed by the trial court. Juror knowledge of a prior trial during a subsequent trial must be assiduously avoided. Before any retrial for the same offense, counsel has a responsibility to caution their witnesses not to refer [to the] prior trial, even as prior proceedings. Counsel should try to question witnesses about their prior testimony in generic terms, e.g. about "previously sworn statements in matters concerning these proceedings."

*Bailey,* 521 A.2d at 1076 n. 6.

convicted of the same crime and that the present jury was to retry the defendant only because the prior conviction was reversed on procedural grounds."). *See also United States v. Eccleston,* 961 F.2d 955 (D.C.Cir.1992) (reversing the trial court's denial of a mistrial because the police witness gave inadmissible hearsay testimony and "[a]lthough the district court instructed the jury to disregard the statement ... given the frailty of the government's case, the instruction was inadequate to cure the highly prejudicial impact of the officer's testimony.") There are, of course, a number of federal cases that address possibly prejudicial "blurts" where a mistrial was denied. None of these cases, however, involve a blurt of a "conviction" on the same charges by a witness.[5] Our decision

---

5. *See United States v. Torres,* 959 F.2d 858, 860 (10th Cir.) (noting that denial of mistrial was proper where government informant stated, *inter alia,* that he knew the defendant "on the street ... as a [drug] dealer" because the trial court "sustained the objection, struck from the record [the characterization] and instructed the jury to disregard [the comment]" and, accordingly, the defendant's right to a fair trial "was not impaired by these isolated responses ... which the jury was instructed to disregard."), *cert. denied,* — U.S. ——, 113 S.Ct. 236, 121 L.Ed.2d 171 (1992); *United States v. Nimrod,* 940 F.2d 1186, 1188 (8th Cir. 1991) (finding that the trial court did not abuse its discretion in not granting a motion for mistrial where detective testified with regard to a third party's statement that the defendant had delivered cocaine because there was "no evidence the government knowingly presented false or materially misleading evidence" and defendant was not prejudiced.), *cert. denied,* — U.S. ——, 112 S.Ct. 986, 117 L.Ed.2d 148 (1992); *United States v. Rodriguez,* 929 F.2d 1224, 1228 (7th Cir.1991) (noting that no error was committed where a testifying officer inadvertently blurted that the defendant "had previously been arrested for participating in a heroin transaction" because the trial court sustained defense counsel's objection, struck the testimony, and instructed the jury to disregard any mention of the arrest.); *United States v. Hoelscher,* 914 F.2d 1527, 1535–36 (8th Cir.1990) (holding that no error was committed where issue of whether the defendant had committed another crime was injected into the trial by the co-defendant but was immediately followed by the trial court's instructions to the jury that only the counts listed on the indictment be considered.), *cert. denied,* 498 U.S. 1090, 111 S.Ct. 971, 112 L.Ed.2d 1057 (1991); *United States v. Hernandez,* 873 F.2d 925, 927–28 (6th Cir.1989) (noting that the defendant was not entitled to mistrial when government witness made reference to the defendant's prior arrest in another state because of the weight of the other evidence presented during the trial and the trial court issued curative instructions.); *United States v. Morris,* 827 F.2d

1348, 1351 (9th Cir.1987) (stating that the court did not abuse its discretion in denying motion for mistrial made after witness testified that she moved because she "fear[ed] for [her] life" where the trial court sustained the objection, struck the portion of the testimony and gave curative instructions.), *cert. denied*, 484 U.S. 1017, 108 S.Ct. 726, 98 L.Ed.2d 675 (1988); *United States v. Tedder*, 801 F.2d 1437, 1445 (4th Cir.1986) (noting that reversible error was not committed in denying motion for mistrial where a witness made a "limited inadvertent reference to the polygraph examination of a single witness" because the jury was not informed of the result, curative instructions were issued and the jury heard a "great deal of evidence from other sources."), *cert. denied*, 480 U.S. 938, 107 S.Ct. 1585, 94 L.Ed.2d 775 (1987); *United States v. Sawyer*, 799 F.2d 1494, 1505–06 (11th Cir. 1986) (stating that there was no error in refusing to grant a mistrial where an employee of a commodities firm characterized the firm's business as a "scam" because the court struck these references from the testimony and issued curative instructions.), *cert. denied*, 479 U.S. 1069, 107 S.Ct. 961, 93 L.Ed.2d 1009 (1987); *United States v. Blanton*, 793 F.2d 1553, 1564–65 (11th Cir.) (clarifying that there was no error in refusing a motion for mistrial where witness inadvertently mentioned that the defendant had been charged with, but not convicted of, rape because there was "no evidence of prejudice. The comment slipped out, was promptly objected to, and the judge instructed the jury that it was irrelevant and could not be considered."), *cert. denied*, 479 U.S. 1021, 107 S.Ct. 678, 93 L.Ed.2d 728 (1986); *United States v. Domina*, 784 F.2d 1361 (9th Cir.1986) (observing that where witness made a reference to the defendant's prior offenses, there was no abuse of discretion in denying a mistrial because the reference was brief, the trial court immediately sustained an objection and gave curative instructions.), *cert. denied*, 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987); *United States v. Slocum*, 708 F.2d 587, 598 (11th Cir.1983) (affirming trial court's decision to deny defendant's motion for mistrial where defendant with conspiracy to remove birds from quarantine station and witness testified that defendant had asked her to falsify veterinary certificates for shipment of birds to Canada because the jury was polled individually, the court gave instructions to disregard evidence withdrawn from the jury and the "disputed comments [did not have] a substantial impact on the jury deliberations."); *United States v. Lyons*, 703 F.2d 815, 818–19 (5th Cir.1983) (noting that where the witness stated that she met with the defendant for the purpose of discussing business "pertaining to some burglaries" and then asserted her fifth amendment rights, there was no error in denying request for mistrial because the witness' testimony was "short and primarily cumulative to previously admitted evidence" and the trial court gave instructions to disregard the testimony.); *United States v. Veteto*, 701 F.2d 136 (11th Cir.) (stating that where witness remarked that one of the co-defendants had "been in prison before" and defense counsel asserted that a mistrial should be granted because "the witness' remarks had improperly injected [defendant's] character into evidence," the court disagreed stating that "[w]hile use of such words as 'jail,' 'prison,' 'arrest' are generally to be avoided, where irrelevant, the mere utterance of the word does not, without regard to context or circumstances,

must be based on the record before us and, unlike the *Bailey* court, we do not hold that "juror knowledge of a prior conviction that comes during the course of subsequent pro- ceedings is cause for a mistrial *ipso facto*." *Bailey,* 521 A.2d at 1076 n. 6.

Additionally, we note that Officer Sewell's disclosures re- garding the prior trial and conviction could not have been admitted under the doctrine of "opening the door." In *Clark v. State,* 332 Md. 77, 84–85, 629 A.2d 1239 (1993), the Court of Appeals explained this doctrine as follows:

> The "opening the door" doctrine is really a rule of expanded relevancy and authorizes admitting evidence which other- wise would have been irrelevant in order to respond to (1) admissible evidence which generates an issue, or (2) inad- missible evidence admitted by the court over objection. Generally, "opening the door" is simply a contention that competent evidence which was previously irrelevant is now relevant through the opponent's admission of other evidence on the same issue.

---

constitute reversible error per se" and thus there was no error because the defendant "failed to show that the remark so influenced the trial's outcome as to constitute plain error.") (citations omitted), *cert. denied* 464 U.S. 839, 104 S.Ct. 131, 78 L.Ed.2d 127 (1983); *United·States v. Feroni,* 655 F.2d 707, 711–13 (6th Cir.1981) (noting that no reversible error was committed by the trial court in denying a motion for mistrial where a witness, who was originally a co-defendant, indicated on cross- examination that he pled guilty because he did not want to "walk into a courtroom with a three-time loser" because the court offered to give cautionary instructions and the "[1] reference to [defendant's] prior convictions was inadvertent ... [2] was elicited not by the government, but by defense counsel ... [and] [3] the effect of the remark on the jury ... was greatly mitigated by other evidence properly admitted at trial."); *United States v. Walker,* 621 F.2d 163, 167–68 (5th Cir.1980) (stating that the motion for mistrial was properly denied where prose- cutor attempted to introduce testimony of events that transpired five years earlier because the court sustained the objection and issued instruction to disregard the prosecutor's question.), *cert. denied,* 450 U.S. 1000, 101 S.Ct. 1707, 68 L.Ed.2d 202 (1981); *United States v. Klein,* 546 F.2d 1259, 1263 (5th Cir.1977) (noting that motion for mistrial was properly denied where the government witness referred to the defendant's prior criminal record because the trial court promptly admonished the jury to disregard these statements and "the agent's statements did not have a substantial impact on the jury's verdict.")

The Court further explained that where, in a rape case, an officer testified that the defendant was implicated in another rape case, the trial court should have undertaken the following analysis:

> Where, as in the instant case, an adverse witness gives an unresponsive, unanticipated prejudicial answer to a question, the issue is whether the admission of rebutting evidence is controlled by the "opening the door" rules of expanded relevancy or by the more limited rules of curative admissibility. The answer depends on the character of the responsive evidence sought to be admitted. If the proffered responsive evidence is competent evidence that would otherwise be admissible if relevant, then it is tested by the rules of relevancy ... If the proffered responsive evidence would be incompetent (e.g., hearsay) regardless of its relevance, then it is only admissible if permitted by the principles of curative admissibility.

*Id.* at 91–92, 629 A.2d 1239. The Court then held that because the defendant's counsel sought to counterattack the police officer's disclosure by utilizing "otherwise irrelevant *and* incompetent hearsay" evidence, the doctrine of curative admissibility was applicable. *Id.* at 92, 629 A.2d 1239. The Court also noted that the "damage to [the defendant's] case [caused by the disclosure] cannot be overstated ... [and] may have been sufficiently prejudicial to justify a mistrial." *Id. See also Terry v. State,* 332 Md. 329, 338–39, 631 A.2d 424 (1993) (noting that admission of prior conviction for same or similar crime to counter defense counsel's improper opening statement was prejudicial and "tantamount to killing an ant with a pile driver.") In the instant case, even if we were to hold that Officer Brown's testimony was admissible under either the "opening the door" or curative admissibility theory, based upon our review of the record we cannot hold that Officer Sewell's disclosure regarding the previous conviction was admissible under either theory. In fact, we cannot think of a more prejudicial disclosure than a jury learning that the defendant had been tried and convicted by another jury for the very same charges.

We recognize that the nature of the defense—that the State could not produce a critical portion of the corpus delicti (i.e., the CDS)—required the State to explain the absence of the physical evidence and consequently the evidence of a prior trial. The blurt, however, of a conviction in this very case was so egregious that not withstanding the trial judge's valiant efforts to avoid a mistrial, through the issuance of curative instructions, a mistrial was the only cure. Accordingly, we conclude that when the jury learned of appellant's prior trial and conviction on the very same charges, this information was "so prejudicial that it denied the defendant a fair trial" and "transcended the curative effect of the instruction." *Rainville*, 328 Md. at 408, 614 A.2d 949 (quoting *Kosmas v. State*, 316 Md. 587, 594, 560 A.2d 1137 (1989)).

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR A NEW TRIAL. COSTS ASSESSED TO THE MAYOR AND CITY COUNCIL OF BALTIMORE.**